(C.D. 3917)

Continental Importing Co. *v.* United States

United States Customs Court, Second Division

(Decided November 7, 1969)

*Rode & Qualey* (*John S. Rode* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in this case consists of sisal rugs imported from Haiti and entered at the port of New York. It was assessed with duty at 42½ per centum ad valorem under item 361.05 of the Tariff Schedules of the United States, as floor coverings, composed wholly or in part of braids, in continuous lengths, sewn or otherwise bound together but not woven, of textile materials. It is claimed to be properly dutiable at 16 per centum ad valorem under item 222.57, as floor coverings of unspun fibrous vegetable materials, other than common China, India or Japan straw. Another claim, under item 361.56, was not pressed at the trial and is deemed abandoned.

The pertinent provisions of the tariff schedules are as follows:

|  | | |
|---|---|---|
| | Floor coverings composed of braids, cords, fabric strips, and similar materials in continuous lengths, sewn or otherwise bound together but not woven, of textile materials: | |
| 361.05 | Wholly or in part of braids (except tubular braids with a core) _____ | 42.5% ad val. |
| | Floor coverings of unspun fibrous vegetable materials: | |
| 222.55 | Of common China, India, or Japan straw _____ | 6.4% ad val. |
| 222.57 | Other _____ | 16% ad val. |

Schedule 2, part 2B headnotes:

  2. For the purposes of the tariff schedules—

*        *        *        *        *        *        *

    (d) the term "unspun fibrous vegetable materials" means bamboo, rattan, willow, chip, straw, palm leaf, grass, seagrass, and similar fibrous vegetable substances, which have not been spun.

Schedule 3 headnotes:

  2. For the purposes of the tariff schedules—
    (a) the term "textile materials" means—
        (i) the fibers (cotton, other vegetable fibers, wool and hair, silk, and man-made fibers) provided for in part 1 of this schedule.

Schedule 3, part 1B headnotes:

  1. For the purposes of the tariff schedules—
    (a) the term "vegetable fiber" means vegetable fiber which can be spun * * *
    (b) the term "raw" means the fiber as obtained from the plant source, or such fiber which has been merely dried, sorted, or graded. This subpart does not cover the plant or part of the plant from which the fiber is obtained (see part 15 of schedule 1);

It was stipulated at the trial:

1. That the merchandise at issue consists of floor coverings which are made of squares joined together.

2. That said squares are sewn or otherwise joined together.

3. That said squares are not woven.

4. That the material of which said squares are made consists of sisal rugs such as those involved herein and has sold them for 15 years

5. That said braids are in continuous lengths.

6. That said sisal fibers are not spun.

Manuel Pogash, owner of Continental Importing Co., the plaintiff herein, testified that he had been a part owner of the company since 1946 and became sole owner in November 1967. He is familiar with sisal rugs such as those involved herein and has sold them for 15 years to department stores, rug stores, furniture stores, and interior decorator wholesalers.

He identified exhibits 1 and 2 as sisal squares of which the rugs are made, and exhibit 3 as an example of sisal squares joined together. The samples appear to be made of braided groups of fibers in continuous length wound from the center to form a square about 11½ inches by 11½ inches. The witness had never seen the process by which the merchandise was made.

There was also received in evidence a square which the witness identified as composed of abaca hemp (exhibit 4) and another composed of rush (exhibit 5). The witness stated that they were similar

to the sisal squares and were sewn together into rugs. The hemp square appears to be made of braided fibers and the rush square of a broader material.

The witness testified that in addition to sisal floor coverings made of squares, there is a sisal broadloom, which is machine-woven into carpeting. Three samples were received in evidence as collective exhibit 6. They appear to be composed of fibers which have been twisted into strands and woven.

On cross-examination, Mr. Pogash identified exhibit A as a sample of a sisal square. It is similar to exhibits 1 and 2 but appears to be smaller and more crudely made.

Defendant called Miss Amelia Eaton who holds a degree in textile chemistry from the New Bedford Institute of Technology and has been employed as a chemist in the United States Customs Laboratory for 12 years. She had previously been employed in the textile industry and in the Navy Department in research and development of naval clothing. She testified that she had received exhibit A for analysis, had tested the merchandise, and made a report. The report (exhibit B) states:

> The sample consists of 3 ply braids of continuous lengths, bound together to form a square measuring approximately 6″ x 6″. The braids and binding material are composed of sisal fibers, and are textile material as defined in headnote 2(a) of Schedule 3 of the T.S.U.S.

She stated that in her opinion, based on her professional qualifications and experience, exhibit A was a textile material. She considered exhibit 4 to be a textile material also, but not exhibit 5.

It is clear from the record that the merchandise is composed of unspun sisal fiber obtained from the leaves of the sisal plant, braided, and made into squares, which are sewn or otherwise joined to form floor coverings. Although there is no testimony on the point, we assume that the leaves of the sisal plant must have been first separated into fiber in some manner. See, for example, *United States* v. *Goldberg & Seltzer, Inc.*, 36 CCPA 64, C.A.D. 399 (1949), for a description of possible methods. The issue is whether the merchandise is classifiable as floor coverings composed of textile materials or as floor coverings of unspun fibrous vegetable materials, as those terms are defined in the tariff schedules.

The term "unspun fibrous vegetable materials" is defined in headnote 2(d), part 2B, schedule 2, as "bamboo, rattan, willow, chip, straw, palm leaf, grass, seagrass and similar fibrous vegetable substances, which have not been spun." While the fibers in the instant case have not been spun there is little evidence tending to show that they are similar to bamboo or any of the other named materials. Rush is some-

times defined as a grass-like plant (Funk & Wagnalls New Standard Dictionary, 1956 edition) and the rush square (exhibit 5) is superficially similar to the sisal squares (exhibits 1 and 2). Mr. Pogash stated that they were similar, apparently on the ground that both were sewn into rugs. The rush article does not appear to be made of fiber and Miss Eaton did not consider it similar to the sisal square. Cf. *Barham et al.* v. *United States*, 11 Ct. Cust. Appls. 536, T.D. 39679 (1923), where it was held that merchandise made of rush, sedge, or seagrass was not classifiable as manufactures of vegetable fiber since the materials consisted of flat strands $\frac{1}{8}$ to $\frac{1}{4}$ inch wide and not fiber. While we are of opinion that plaintiff has not established the required similarity, for the purpose of further discussion of the issues, we will assume *arguendo* that it has.

The term "textile materials", as defined in headnote 2(a) to schedule 3, includes "the fibers (cotton, other vegetable fibers, wool and hair, silk, and man-made fibers) provided for in part 1 of this schedule." According to headnote 1(a) to part 1B, "the term 'vegetable fiber' means vegetable fiber which can be spun." Sisal and henequen are provided for *eo nomine* in items 304.46–304.48 under a superior heading for vegetable fiber. Evidently Congress considered sisal fiber to be a fiber which could be spun. There is no evidence in the record before us to indicate that the fibers from which the imported merchandise is made were unspinnable.

While plaintiff admits that some articles composed of fibers are classifiable under the textile schedule, it claims that others are classifiable under the provision for unspun fibrous vegetable materials, the distinction being based on whether or not the fibers have been spun. In support of this view, plaintiff relies on statements in the Tariff Classification Study of November 15, 1960, Schedule 2, p. 50, reading as follows:

> The term "unspun fibrous vegetable materials", as defined in headnote 2(d) embraces "bamboo, rattan, willow, chip, straw, palm leaf, grass, seagrass, and similar fibrous vegetable substances, which have not been spun". This definition, which was not in the draft published for public hearings, is included for convenience in making reference to this class of materials in this subpart and elsewhere in the schedules, and also to introduce, wherever feasible, uniformity in the treatment of products made from these materials. These materials are generally long, slender, and sufficiently flexible to permit of their being interwoven or interlaced together in making basketry, wickerwork, blinds, shades, and other articles. Sometimes long vegetable fibers (for example, abaca fibers or pineapple fibers) are tied end to end and woven into fabrics which are quite similar to fabrics of textile materials. However, when the fibers have not been spun, such woven materials would remain in this subpart. * * *

The fibers here have not been woven.

In the same publication of the Tariff Commission, in Schedule 3, p. 38, it is stated:

> Subpart B, headnote 1(a), as published for hearings, defined the term "vegetable textile fiber". Inasmuch as the term "vegetable fiber" is consistently used through the schedules as referring to vegetable textile fibers, the word "textile" has been eliminated to avoid interpretive problems. Thus, the term "vegetable fiber" whenever it appears in the schedules has reference to textile fiber and is used in contradistinction to the term "unspun fibrous vegetable materials" as defined in headnote 2(d) of part 2B of schedule 2.

The term "textile materials" includes a vegetable fiber provided for in schedule 3, part 1, as is sisal. A vegetable fiber is one that *can be* spun. (Schedule 3, headnote 2(a); schedule 3, part 1B, headnote 1(a); items 304.46–304.48.) Had Congress intended the distinction claimed by plaintiff, it would have defined vegetable fiber as one that *has been* spun. Not having done so, it seems clear that Congress meant to include as a textile material any vegetable fiber provided for in schedule 3, part 1, which can be spun, whether or not it actually has been spun.

In addition to defining fiber, headnote 1 to schedule 3, part 1B, provides:

> (b) the term "raw" means the fiber as obtained from the plant source, or such fiber which has been merely dried, sorted, or graded. This subpart does not cover the plant or part of the plant from which the fiber is obtained (see part 15 of schedule 1).

Part 15 of schedule 1 includes in subpart G, straws and other fibrous vegetable substances, not specially provided for. Evidently Congress intended that the vegetable fibers named in the textile schedule should be dutiable thereunder, but that the plants from which the fibers are obtained should be classed as fibrous vegetable substances. The distinction is not between fibers spun or unspun but between fibers and fibrous vegetable substances from which fiber may be obtained.

We have recently had occasion to consider other provisions of the tariff schedules covering textile articles in contradistinction to provisions for articles of unspun fibrous vegetable materials. *B. A. McKenzie & Co., Inc.* v. *United States*, 63 Cust. Ct. 110, C.D. 3883 (1969). In that case we held that pads of unspun fibers or henequen or sisal, in an unwoven, matted condition, used to cover mattress springs, were classifiable under item 355.05, as wadding, batting, or unwoven fabrics, or articles made therefrom, of vegetable fiber, and not under item 222.64, as articles of unspun fibrous vegetable materials. We found that the sisal and henequen fibers involved were not shown to be fibrous vegetable substances similar to bamboo, willow, chip, straw, palm leaf,

grass, or seagrass, by proof of similarity in botanical structure. We also held that the term "vegetable fiber" as used in the tariff schedules meant vegetable fiber which is spinnable, but not necessarily spun or in spinnable condition in the imported article. We pointed out that it was "significant of congressional intent that sisal and henequen are included in the textile schedule (schedule 3, part 1B) under provisions for vegetable fibers, and not under schedule 2, part 2B, which includes fibrous vegetable substances."

The floor coverings in the instant case meet all the requirements of item 361.05, *supra*. They are composed wholly or in part of braids; the braids are in continuous lengths; the material is sewn or otherwise bound together but is not woven, and the articles are composed of textile materials as defined in the tariff schedules, that is, a vegetable fiber, sisal, provided for in schedule 3, part 1, which has not been shown to be unspinnable.

We hold, therefore, that the merchandise involved herein was properly classified under said item 361.05. The protest is overruled and judgment will be entered for the defendant.